# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

JOHN A. SCHAUF,

               Plaintiff,

     v.

AMERICAN AIRLINES,

               Defendant.

_____/

Case No.  1:15-cv-01172-SKO

**ORDER ON DEFENDANT'S
MOTION TO DISMISS**

(Doc. 23)

## I.    INTRODUCTION

On December 16, 2015, Defendant American Airlines, Inc., erroneously named as "American Airlines" ("Defendant") filed a motion to dismiss Plaintiff John A. Shauf's ("Plaintiff") complaint and a request for judicial notice of documents filed in Stanislaus County Superior Court prior to removal of the action to federal court. (Docs. 3.)  On December 30, 2015, Plaintiff filed a "Notice of objection to motion to dismiss and request for 30-day extension of hearing."  (Doc. 24.)  After review of the parties' briefs and arguments, the Court determined that reply papers would be unnecessary, the matter was found suitable for decision without oral argument pursuant to Local Rule 230(g), and the hearing date was vacated.

For the reasons set forth below, Defendant's motion to dismiss the Amended Complaint and motion to strike Plaintiff's demand for attorneys' fees are GRANTED with leave to amend.

## II.      BACKGROUND

**A.      Factual Background**[1]

Plaintiff alleges he is a flight attendant with over 18 years of experience on regional, national, and international airlines.  He was hired by American Airlines in May of 2013 and began his first day of post-hire training on or about June 18, 2013.  As a condition of his hiring, Plaintiff was required to pass security and medical background checks.  In the course of his medical background check, Plaintiff revealed that "he had a disabling episode after 2009, that he was hospitalized for depression in 2010, and that he had anxiety and depression, but was not taking any medication at the time of the hiring process.  He also also [*sic*] executed a form confirming he received Medi-Care Part D benefits."  (Am. Compl., pp. 2-3.)  An American Airlines representative informed Plaintiff that so long as he was no longer medicated and could produce a letter demonstrating he was medically stable, he could continue working for American Airlines.  If he began taking medication, he would have to meet certain additional criteria in order to continue working for American Airlines.  Plaintiff was cleared by a physician for training, and because he met the "off medication and stable" documentation criteria, Plaintiff continued training.  (Am. Compl., p. 3.)

On July 16, 2013, Plaintiff had money stolen from his flight bag in an American Airlines training classroom and reported the matter to American Airlines personnel and filed a police report.  As a result of American Airlines personnel's "fail[ure] to take the matter seriously[,]" Plaintiff experienced additional anxiety and told Class Manager Deborah Tierney "he might need to go back on medication he was taking for anxiety."  (Am. Compl., p. 3.)  Plaintiff was assured he was not fired, but was sent home and instructed to return in one week to resume training.  In a letter dated July 23, 2013, Plaintiff was instructed to obtain a physician's note clearing him for return to work and he was required to be "off medication for 30 days[.]"  (Am. Compl., p. 3.)  On August 1, 2013, Plaintiff spoke with American Airlines recruiting staff, who informed him "that after he cleared the medical requirements he would be placed back into the training program

---

[1]      Plaintiff's allegations are drawn from the Amended Complaint and are not factual findings made by the Court. (Doc. 5 ("Am. Compl.").)

where he left off." (Am. Compl., p. 3.)  That same day, Plaintiff's physician spoke with American Airlines medical staff nurse "Doom," who clarified that Plaintiff would have to demonstrate a 30-day "period of stability" prior to reentering the program.  (Am. Compl., pp. 3-4.)

On August 19, 2013, Plaintiff achieved the required period of stability, having been on medication for 31 days.  Plaintiff's physician sent a note clearing Plaintiff to return to training to American Airlines.  When Plaintiff followed up with Nurse Doom, she informed him for the first time that it was "up to American Airlines training/recruiting staff whether [Plaintiff would be] placed back in rotation."  (Am. Compl., p. 4.)  Plaintiff inquired as to whether any other medical issues existed "preventing him from returning to training" and Nurse Doom "indicated there were not."  (Am. Compl., p. 4.)  However, on September 6, 2013, Plaintiff "was fired" from American Airlines.  (Am. Compl., p. 4.)  Plaintiff alleges "[i]t is clear that [he] was fired because of his need for mental health medication, ie [*sic*] because of his disability or American Airlines' perception that he had a disability."  (Am. Compl., pp. 4-5.)

Plaintiff alleges American Airlines violated the Americans with Disabilities Act, 42 U.S.C. § 20101, requiring reasonable accommodation and preventing discrimination based on disability or perceived disability, and violated the California Fair Employment and Housing Act, Cal. Govt. Code §§ 12940 *et seq*., requiring an employer to engage in the interactive process.  (Am. Compl., p. 5.)  Plaintiff alleges Defendant's "arbitrary" change in policy was impermissibly prompted by his disability "in that [American Airlines] initially passed [Plaintiff] for medical after a background check, then brought up the medical issue again, and then terminated him for supposed background check violations."  (Am. Comp., p. 4.)  Plaintiff further alleges these actions were "in complete violatio[ ]n [of] laws protecting disabled persons in that they must be able to determine which criterion they are being denied for and must be in the order of background first, then medical."  (Am. Compl., p. 4.)  Finally, Plaintiff objects to "the alleged character questions brought about by a person c[la]iming to be his sister [which] were not corroborated and constitute a participation in professional slander."[2]  (Am. Compl., p. 4.)

---

[2]   The Court notes that this allegation is not referenced elsewhere in the Amended Complaint and there is no cause of action for slander.

1    Plaintiff alleges he "has suffered economic and emotional distress damages" due to

2   Defendant's conduct.  Plaintiff states that he has "lost approximately $55,000.00 in salary and the

3   seni[o]rity he would have had if the airline had not [ ] engaged in their egregious actions."

4   (Am. Compl., p. 5.)  Further, Plaintiff states that he has been unable to find work subsequent to his

5   termination due to American Airline's "defaming [his] good character and . . . providing negative

6   work reference to potential employer[s]."  (Am. Compl., p. 5.)  Plaintiff requests the Court enjoin

7   Defendant from "defaming [P]laintiff's good character" and from "refus[ing] to admit [P]laintiff

8   to [its] training and employment."  (Am. Compl., p. 5.)  Plaintiff seeks $1,155,000 in general

9   damages, $55,000 in lost past and future wages, "unlimited" punitive damages, to be returned to

10   work with seniority as of June 18, 2013, interest, costs of suit, and attorneys' fees.  (Am. Compl.,

11   p. 11.)

12   **B.    Procedural Background**

13    Plaintiff was terminated on September 6, 2013,[3] and filed a "joint EEOC and DFEH

14   Charge with the EEOC" alleging he was wrongfully terminated.  On May 7, 2014, the EEOC

15   mailed Plaintiff a Notice of Right to Sue.  (Am. Compl., p. 2.)  On May 7, 2015, Plaintiff filed his

16   Complaint with the Stanislaus County Superior Court in accordance with the EEOC Right to Sue

17   letter.  On June 12, 2015, Plaintiff filed a first amended complaint with the Stanislaus County

18   Superior Court.  On July 28, 2015, Defendant timely removed the action to federal court pursuant

19   to 28 U.S.C. § 1332.[4]

20    On December 16, 2015, Defendant filed a motion to dismiss Plaintiff's complaint pursuant

21   to Fed. R. Civ. P. 12(b)(6), or in the alternative to strike Plaintiff's demand for attorneys' fees and

22   order Plaintiff to provide a more definite statement pursuant to Fed. R. Civ. P. 12(e).  (Doc. 23.)

23   Defendant concurrently filed its Request for Judicial Notice, including several court documents

24   from the Stanislaus County Superior Court proceedings.  (Doc. 5.)  On December 30, 2015,

25

26   [3]  Plaintiff also uses the date July 18, 2013, as a date of termination elsewhere in his amended complaint.  The Court
    has construed this as his "constructive" date of termination, as he states he was ordered to go home and take a week's
27   leave of absence from training on July 16, 2013, by Class Manager Deborah Tierney.  (*See* Am. Compl., pp. 2-3.)

    [4]   Defendant stated in its Notice of Removal that removal was timely because service had not yet been properly
28   effectuated.  (Doc. 1, p. 3.)

Plaintiff filed an "objection" to Defendant's motion to dismiss contending there is no demand for attorneys' fees in the Amended Complaint, that he is entitled to "due and fair consideration if the facts can reasonably be determined in [the] complaint[']s language," that the "[f]acts of [the] case are clearly spelled out and [the] causes of action [are] proper and correct before the [C]ourt," and seeking "30 additional days in order to seek . . . an attorney to adequately defend [P]laintiff[']s position and case."[5]  (Doc. 24, pp. 2-4.)

### III.  REQUEST FOR JUDICIAL NOTICE

A court may take judicial notice of an adjudicative fact, which "must be one not subject to reasonable dispute in that it is either (1) generally known . . . (2) or capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.  The Court may also "take judicial notice of proceedings in other courts, both within and without the federal system, if those proceedings have a direct relation to matters at issue," *Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007) (internal quotation marks and citation omitted), although "taking judicial notice of findings of fact from another case exceeds the limits of Rule 201," *Wyatt v. Terhune*, 315 F.3d 1108, 1114 (9th Cir. 2003) (overruled in part on other grounds, *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014)).

---

[5]    Plaintiff also objected to Defendant's motion to dismiss because

> Defendant has willfully and recklessly avoided answering in a concrete and clear way its complaint received [*sic*] and engaged in evasive tactics, [such as] moving [the] matter to [federal] court, asking for repeated dismissals, failing to negotiate a fair settlement with [P]laintiff[,] and to date has not responded once in any way to the matters before the [C]ourt.

(Doc. 24, pp. 3-4.)  As this is not the first time Plaintiff has brought the parties' settlement negotiations – or lack thereof – to the Court's attention (*see* Docs. 9, p. 3 (improperly disclosing settlement offers/demands to the Court); 19, p. 2 (requesting sanctions against Defendant and an order compelling Defendant to "participate in meaningful settlement negotiations"), the Court will address Plaintiff's contentions here.

The decision to settle is left to the discretion of the parties, and the Court <u>will not</u> intervene and order such negotiations.  The parties are welcome to discuss the possibility of settlement among themselves, and should the parties ultimately determine that a settlement conference would be beneficial at some later date, the Court is available to set a settlement conference before a United States Magistrate Judge.  The Court, however, <u>will not</u> order the parties to engage in settlement discussions based upon one party's unilateral demand, and Plaintiff is advised that a renewed request to compel Defendant to engage in settlement negotiations will not be entertained.

Further, Plaintiff is advised that Defendant is only obliged to file a *responsive pleading* to the Amended Complaint – which it has done.  Motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(5) and(6) *are* responsive pleadings.  Therefore, Plaintiff's argument that Defendant has failed to respond meaningfully to the complaint is without merit and will not be further addressed in this order.

Court documents and other matters of public record are the proper subject of judicial notice. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). However, even where judicial notice of a document is granted, it is the existence of such a document and not the truth of the matters asserted within the document that is judicially noticed. *See Rowland v. Paris Las Vegas*, No. 3:13-CV-02630, 2014 WL 769393, at *3 (S.D. Cal. Feb. 25, 2014). Defendant requests judicial notice of court documents filed in the underlying case, *Schauf v. American Airlines,* Stanislaus County Superior Court Case No. 20114498 (Doc. 23-2, Exhs. A (Complaint), B (Amended Complaint)), as well as this Court's September 24, 2015, order denying Defendant's motion to dismiss for inadequate service without prejudice and directing Plaintiff to adequately effectuate service upon Defendant (Doc. 23-2, Exh. C).

Plaintiff has not opposed this request, and the authenticity of these documents is not subject to dispute. Such documents are proper subjects of judicial notice as to the *existence* of the documents – the *contents* of the documents are not the subject of judicial notice. Defendant's request for judicial notice of these documents is GRANTED.

## IV.   DISCUSSION

### A.   Defendant's Motion to Dismiss Pursuant to Rule 12(b)(6) is GRANTED

Defendant contends Plaintiff's Amended Complaint must be dismissed for failure to state a claim and that "Plaintiff's causes of action are not viable claims against Defendant as a matter of law." (Doc. 23, p. 4.) Plaintiff pleaded seven causes of action arising out of his alleged hiring and/or firing from American Airlines' training program: discrimination, harassment, failure to engage in the interactive process, and retaliation under Cal. Govt. Code § 12940 *et seq.*, negligence and negligent retention, and wrongful termination "in violati[o]n of fundamental public policy." (*See* Am. Compl., pp. 6-9.) Plaintiff contends in his "notice of objection" that the "[f]acts of [the] case are clearly spelled out and [the] causes of action [are] proper and correct before the Court." (Doc. 24, pp. 2-3.)

#### 1.   Standards Applicable to Motions to Dismiss Pursuant to Rule 12(b)(6)

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." A court may dismiss

"based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Although a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.  R. Civ. P. 8(a)(2), in order to survive a motion to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face[,]'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must include something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  In making this context-specific evaluation, the court must construe the complaint in the light most favorable to the plaintiff and accept as true the factual allegations of the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).  This rule does not apply to "'a legal conclusion couched as a factual allegation,'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)), nor to "allegations that contradict matters properly subject to judicial notice" or to material attached to or incorporated by reference into the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-89 (9th Cir. 2001).

Determining whether a complaint survives a motion to dismiss for failure to state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  Ultimately, the inquiry focuses on the interplay between the factual allegations of the complaint and the dispositive issues of law in the action. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  Pro se pleadings are held to "less stringent standards than formal pleadings drafted by lawyers." *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Balistreri*, 901 F.2d at 699.  Courts may not supply essential elements not initially pled, *Litmon v. Harris*, 768 F.3d 1237, 1241 (9th Cir. 2014), but "[c]ourts in this circuit have an obligation to give a liberal construction to the filings of pro se litigants," *Blaisdell v. Frappiea*, 729 F.3d 1237, 1241 (9th Cir. 2013).  *See also Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc) (the Court has an obligation to construe the pleadings liberally and to afford the plaintiff the benefit of any doubt).

Further, pro se complaints "may only be dismissed 'if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014) (quoting *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012)).  "This rule relieves pro se litigants from the strict application of procedural rules and demands that courts not hold missing or inaccurate legal terminology or muddled draftsmanship against them."  *Blaisdell*, 729 F.3d at 1241.  However, a pro se plaintiff must still allege facts sufficient to allow a reviewing court to determine that a claim has been stated.  *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

### 2.  Plaintiff's First Cause of Action for Discrimination Is Insufficiently Pled

Plaintiff's first cause of action for discrimination alleges a violation of California Government Code § 12940(a), which provides, in pertinent part, that it is an unlawful employment practice "[f]or an employer, because of the . . . mental disability[6] [or] medical condition . . . of any person, to refuse to hire or employ the person or . . . discharge the person from employment . . . or to discriminate against the person in compensation or in terms, conditions or privileges of employment."  Cal. Govt. Code § 12940(a).  A *prima facie* disability discrimination claim requires that Plaintiff show that he (1) suffered from a disability, or was regarded as suffering from a disability; (2) could perform the essential duties of the job with or without reasonable accommodations; and (3) was subjected to an adverse employment action because of the disability or perceived disability.  *Achal v. Gate Gourmet, Inc.*, No. 15-CV-01570-JCS, 2015 WL 4274990, at *7 (N.D. Cal. July 14, 2015) (citing *Wills v. Super. Ct.*, 195 Cal. App. 4th 143, 159-60 (2011)); *Guz v. Bechtel*, 24 Cal. 4th 317, 355 (2000).

"Essential duties" are defined as "the fundamental job duties of the employment position of the individual with a disability holds or desires."  Cal. Govt. Code § 12926(f)(1).  Determining

---

[6]     FEHA defines "mental disability" as a "mental or psychological disorder or condition, such as . . . emotional or mental illness . . . that limits a major life activity[,]" including working.  Cal. Govt. Code § 12926(j)(1).  Also embraced in this section is "[h]aving a record or history of a mental or psychological disorder or condition . . . which is known to the employer" or "[b]eing regarded or treated by the employer . . . as having, or having had, any mental condition that makes achievement of a major life activity difficult . . . [or] having, or having had, a mental or psychological disorder or condition that has no present disabling effect, but that may become a mental disability[.]"  Cal. Govt. Code § 12926(j)(3)-(5).

1    the essential functions of a position requires a highly fact-intensive inquiry.  *Lui v. City & Cnty. of*

2    *San Francisco*, 211 Cal. App. 4th 962, 971 (2012).  The standard for determining whether an

3    employee has been subjected to "adverse employment action" is whether the employment action

4    materially affected the "terms and conditions of employment," with that term being liberally

5    construed in order to afford employees "appropriate protection against employment

6    discrimination."  Cal. Govt. Code §§ 12940(a) and (h); *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th

7    1028, 1054 (2005).  California courts have held that termination, dissemination of a negative

8    employment reference, and issuance of a negative performance evaluation all constitute adverse

9    employment actions.  *Brooks v. City of San Mateo*, 229 F.3d 917, 928-29 (9th Cir. 2000).  To

10   satisfy the third element of a section 12940(a) disability discrimination claim, the plaintiff's

11   disability must have been a "substantial motivating factor" in the particular employment decision.

12   *Harris v. City of Santa Monica*, 56 Cal. 4th 203, 233 (2013).

13        Liberally construed, Plaintiff's amended complaint fails to sufficiently plead specific, non-

14   conclusory facts that place Defendant on notice of the disability discrimination claim against it and

15   that, taken as true, plausibly suggest an entitlement to relief.  *Blaisdell*, 729 F.3d at 1241 (pro se

16   pleading must be liberally constructed).  Plaintiff alleges that Defendant was aware that he is a

17   member of a protected class, as he disclosed a history of anxiety and depression as part of his

18   admission to Defendant's training program.  (Am. Compl., pp. 2-3.)  Plaintiff also alleges he was

19   able to perform the essential duties of the position to which he applied, as he had over 18 years of

20   experience as a flight attendant at the time he was admitted to American Airlines' training

21   program.  (Am. Compl., p. 2.)  Defendant does not dispute that Plaintiff passed both the security

22   and medical background clearances and began the training program without incident.  Plaintiff

23   fails, however, to demonstrate an adverse employment action substantially motivated by a

24   discriminatory motive.

25        After informing the training program Class Manager "he might need to go back on

26   medication he was taking for anxiety[,]" Plaintiff alleges Defendant required him to comply with

27   several conditions to demonstrate his fitness to continue in the American Airlines training

28   program.  (Am. Compl., pp. 3-4.)  On September 6, 2013, despite complying with those

conditions, Plaintiff alleges he was "fired from the company" "because of his need for mental health medication." (Am. Compl., pp. 4-5.)  However, it is unclear that Plaintiff was terminated from the training program specifically because of his *impairment* or because of his *need* for treatment/medication.  Instead, as alleged, it appears that a procedure was put into place and "allowances were specifically made for Plaintiff to return to training" (Doc. 23-1, p. 7).  As alleged, there are no facts showing a causal nexus between Plaintiff's membership in a protected class and the alleged adverse employment action.

Therefore, based on the allegations of the Amended Complaint, the Court cannot conclude that Plaintiff's disability was a "substantial motivating factor" in his termination from the training program.  *Harris*, 229 F.3d at 928-29.  (*See* Am. Compl. p. 2-5.)  Indeed, Plaintiff's Amended Complaint indicates that Defendant offers a non-discriminatory reason for Plaintiff's termination: "supposed background check violations." (*See* Am. Compl., p. 4.)  Because Plaintiff has failed to allege facts establishing a *prima facie* claim for discrimination, the Court must dismiss his claim.

### 3.    Plaintiff's Second Cause of Action for Harassment Is Not Sufficiently Pled

Plaintiff's second cause of action for harassment alleges a violation of California Government Code § 12940(j), which makes harassment illegal and requires an employer to take immediate and appropriate action against it.  There are three elements for a claim of harassment under FEHA: (1) the plaintiff belongs to a protected group; (2) the plaintiff was subjected to unwelcome harassment because of being a member of that group; and (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment.  *See Aguilar v. Avis Rent A Car System, Inc.*, 21 Cal. 4th 121, 130 (1999).  To fulfill the "severe or pervasive" prong, a plaintiff must show a "concerted pattern of harassment of a repeated, routine, or generalized nature."  *Id*. at 131 (citation omitted).  Isolated incidents that do not exist in a concerted pattern can also fulfill the "severe or pervasive" prong, but only if such isolated incidents consist of "a physical assault or the threat thereof."  *Hughes v. Pair*, 46 Cal. 4th 1035, 1049 (2009) (quoting *Lyle v. Warner Bros. Television Prods.*, 38 Cal. 4th 264, 284 (2006)).  Further, the prohibition of harassment "forbids only behavior so objectively offensive as to . . . create a hostile or abusive work environment."  *See Lyle*, 38 Cal. 4th at 283.

1    Whether an environment is hostile or abusive can be determined "only by looking at all the

2    circumstances [including] the frequency of the discriminatory conduct; its severity; whether it is

3    physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably

4    interferes with an employee's work performance."   *Id*. at 283 (citation omitted).   Merely

5    "offensive comments" in the workplace are not actionable.  *See id.* (citation omitted).

6         Plaintiff alleges he was unlawfully harassed due to his medical conditions, anxiety and

7    depression.  (Am. Compl., pp. 1-3; 6-7.)   Plaintiff alleges that these medical conditions were

8    known to Defendant and documented in his medical background check at the time he entered

9    American Airlines' training program.  (Am. Compl., pp. 2-3.)  Plaintiff further alleges that after an

10   exacerbating incident, he was told to go home, and after informing his Class Manager he may need

11   to resume taking medication for anxiety, he was told he would need to comply with certain

12   requirements to be medically cleared to resume training.  (Am. Compl., p. 3.)  Thereafter, Plaintiff

13   alleges, he engaged in several rounds of back-and-forth with various personnel regarding whether

14   he had fully complied with any and all requirements to be cleared to resume training, and he was

15   eventually somehow terminated from the program.  (Am. Compl., pp. 4-5.)

16        Plaintiff's allegations, focusing solely upon the imposition of certain medical compliance

17   requirements to resume training, are facially insufficient to establish harassing conduct, and fail to

18   satisfy the "severe and pervasive" prong of a FEHA harassment claim.  (Doc. 23-1, pp. 8-9

19   ("[A]side from the conclusory assertion that 'Defendants engaged in harassment,' Plaintiff does

20   not allege *any* purportedly harassing conduct, let alone any based on a perceived or actual

21   disability, and certainly not any *severe or pervasive* conduct") (italics in original) (citing *Sprewell*

22   *v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2011).)  *See also Lyle*, 38 Cal. 4th at 283

23   (the prohibition of harassment "forbids only behavior so objectively offensive as to . . . create a

24   hostile or abusive work environment").  Because Plaintiff has failed to allege facts establishing a

25   *prima facie* claim for discrimination, the Court must dismiss his claim.

26   //

27   //

28

11

**4.     Plaintiff's Third Cause of Action for Failure to Engage in the Interactive Process is not Sufficiently Pled**

Plaintiff's third cause of action for failure to engage in the interactive process alleges a violation of California Government Code § 12940(n), which imposes on employers a mandatory obligation to engage in the interactive process once an employee requests an accommodation for his or her disability, or when the employer itself recognizes the need for one.  *Brown v. Lucky Stores, Inc.*, 246 F.3d 1182, 1188 (9th Cir. 2001).  Under FEHA, an employer's failure "to engage in a timely, good faith, interactive process with the employee . . . to determine effective reasonable accommodations" is a violation of the statute separate from any failure to make reasonable accommodations for a qualified employee's disability.  Cal. Govt. Code § 12940(n); *Wilson v. County of Orange*, 169 Cal. App. 4th 1185, 1193 (2009).  Once initiated, the employer has a continuous obligation to engage in the interactive process in good faith.  *Swanson v. Morongo Unified School Dist.*, 232 Cal. App. 4th 954, 971 (2014).

The interactive process "requires communication and good-faith exploration of possible accommodations between employers and individual employees with the goal of identifying an accommodation that allows the employee to perform the job effectively."  *Yeager v. Corr. Corp. of Am.*, 944 F. Supp. 2d 913, 919 (E.D. Cal. 2013).  To prevail on a § 12940(n) claim, a plaintiff must establish that (1) the employer had a duty to engage in the interactive process and (2) the employer failed to provide any reasonable accommodation.  *Scotch v. The Art Ins. of California-Orange County*, 173 Cal. App. 4th 986, 1003 (2000) (citing *Wilson*, 169 Cal. App. 4th at 1193).  The employee must identify a reasonable accommodation that would have been available at the time the interactive process should have occurred to prevail at trial; however, plaintiffs are not required to identify such a reasonable accommodation at the pleading stage because often "[e]mployees do not have at their disposal the extensive information concerning possible alternative positions or possible accommodations which employers have."  *Nealy v. City of Santa Monica*, 234 Cal. App. 4th 359, 379 (2015) (internal citation omitted).

Here, Plaintiff has failed to allege non-conclusory facts plausibly stating a claim for relief for failure to engage in the interactive process.  (*See* Am. Compl., pp. 5 ("It is equally clear by the

1   above facts . . . [that Defendant] failed to engage in the interactive process"); 7 ("In violation of

2   FEHA, through their actions as set forth herein, Defendants engaged in unlawful conduct by

3   failing to engage in a good faith interact[ive] process").)   These allegations, are conclusory and

4   insufficient to satisfy Plaintiff's burden of stating a claim for relief.  *Twombly*, 550 U.S. at 555.

5   Even assuming that Plaintiff has alleged a need for reasonable accommodations for his disability

6   which would give rise to Defendant's obligation to engage in a good faith interactive process with

7   him, it appears that Defendant did so – Plaintiff alleges that after he reported a need to resume

8   taking anxiety medication for his medical disabilities, Defendant informed him of compliance

9   requirements he would have to meet to be cleared to return to the training program.  (Am. Compl.,

10   pp. 3-5.)  Rather than demonstrating Defendant's failure to engage in the interactive process, the

11   Amended Complaint states that Defendant "voluntarily provided opportunities for Plaintiff to

12   demonstrate he was medically fit for training."  (Doc. 23-1, p. 9.)  Because Plaintiff has failed to

13   allege facts establishing a claim for failure to engage in the interactive process, the Court must

14   dismiss his claim.

15           **5.       Plaintiff's Fourth Cause of Action for Retaliation is not Sufficiently Pled**

16           Plaintiff's fourth cause of action for retaliation alleges a violation of California

17   Government Code § 12940(f), which makes retaliation for participation in a protected activity

18   illegal.   To establish a *prima facie* case of retaliation, plaintiff must demonstrate that (1) he

19   engaged in a protected activity; (2) he suffered an adverse employment action; and (3) there was a

20   causal link between the protected activity and the adverse employment action.  *Yartzoff v. Thomas*,

21   809 F.2d 1371, 1375 (9th Cir. 1987).  To establish causation, a plaintiff must show that "'engaging

22   in the protected activity was one of the reasons for his firing and that but for such activity he

23   would not have been fired.'"  *Holtzclaw v. Certainteed Corp.*, 795 F. Supp. 2d 996, 1020 (E.D.

24   Cal. 2011) (quoting *Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1064-65 (9th Cir. 2002)).

25           Plaintiff fails to plead facts establishing that he engaged in a protected activity.  Under the

26   statute, "protected activity" contemplates some sort of affirmative action taken by the plaintiff to

27   "alert[ ] his employer to his belief that discrimination, not merely unfair personnel treatment, had

28   occurred."  *Lewis v. City of Fresno*, 834 F. Supp. 2d 990, 1002 (E.D. Cal. 2011) (internal

quotations and citations omitted).  Plaintiff alleges that he "was fired because of his need for mental health medication, ie [*sic*] because of his disability or [Defendant's] perception that he had a disability.  (Am. Compl., pp. 4-5.)  Even liberally construed, Plaintiff's medical condition or need for medication is not "protected activity" under FEHA.

Plaintiff finally alleges that "Defendants engaged in unlawful retaliation after Plaintiff made requests for reasonable accommodation, and/or made efforts to engage in a good faith interactive process, and/or filed charges with the DFEH/EEOC."  (Am. Compl., p. 6.)  However, as discussed above, Plaintiff has *not* alleged facts demonstrating Defendant failed to engage in the interactive process, and further, Plaintiff has alleged that he filed charges with the DFEH/EEOC only *after* experiencing an adverse employment action (*see* Am. Compl., pp. 2; 16).

Because Plaintiff has failed to allege facts establishing a claim for retaliation causally linked to his engaging in a protected activity, the Court must dismiss his claim.

**6.     Plaintiff's Fifth and Sixth Cause of Action for Negligence and Negligent Retention are not Sufficiently Pled**

Plaintiff's fifth and sixth causes of action appear to fall under the same penumbra, a claim for negligent hiring, supervision, training, and/or retention.  Plaintiff's fifth cause of action for "negligence" alleges "Defendants were all bound by obligations contained in the California Statutes and related regulations . . . and owed Plaintiff a duty not to negligently carry out those obligations."  (Am. Compl., p. 8.)  Plaintiff's sixth cause of action for "negligent retention" alleges "Defendants owed Plaintiff a duty of care to train its management level employees to follow the California Statu[t]es and regulations  .  .  .  while Plaintiff was employed by Defendants."  (Am. Compl., p. 9.)

Defendant argues that Plaintiff's negligence claims "in connection with how Plaintiff was treated while employed by Defendants" are subject to workers' compensation exclusivity.  It is well established that claims for acts occurring in the normal course of the employer-employee relationship are barred by workers' compensation exclusivity principles.  *Ortiz v. Lopez*, 688 F. Supp. 2d 1072, 1087-88 (E.D. Cal. 2010) (citing *Livitsanos v. Super. Court*, 2 Cal. 4th 744 (1992); *Coit Drapery Cleaners, Inc. v. Sequoia Ins. Co.*, 14 Cal. App. 4th 1595, 1606 (1993)) (claims

against employer for negligent supervision barred by workers' compensation exclusivity); Cal. Labor Code 3600 *et seq.*  However, claims of negligence are not necessarily preempted by the workers' compensation exclusivity, such as in cases where the "defendant's misconduct exceeds the normal risk of the employment relationship."  *Fretland v. Cnty. of Humboldt*, 459 F. Supp. 2d 959, 1492 (1999) (citing *Livitsanos*, 2 Cal.4th 744, 756).  Negligence in responding to claims of harassment and discrimination, based on accusations of discrimination, are "not a normal risk of the compensation bargain."  *Scott v. Solano Cnty. Health & Social Servs.*, 459 F. Supp. 2d 959, 971 (E.D. Cal. 2006).

Plaintiff's Amended Complaint sets forth allegations relating to how he was supervised in Defendant's training program, including supervisory decisions made regarding Plaintiff's medical fitness, his ability to remain in the training program, and his eventual termination from the training program.  (*See* Am. Compl.)  As discussed above, Plaintiff has alleged he suffered unlawful discrimination and harassment on the basis of his medical conditions, but has failed to sufficiently plead facts in support of either claim.  Were Plaintiff able to adequately plead claims for discrimination and harassment in a second amended complaint, however, his negligence causes of action for Defendant's failure to fulfill its duty to prevent such conduct would *not* be barred by workers' compensation.  Discrimination and harassment are conduct that fall outside the normal risk of the compensation bargain, *Scott*, 459 F. Supp. 2d at 971, and therefore Plaintiff's claim is not necessarily subject to worker's compensation exclusivity.

Because Plaintiff's claims for discrimination and harassment are not sufficiently pled, as discussed above, the Court must dismiss his negligence claims.  However, the Court makes no finding at this time as to whether or not Plaintiff's negligence claims are pre-empted by worker's compensation exclusivity.

### 7. Plaintiff's Seventh Cause of Action for Wrongful Termination is not Sufficiently Pled

Plaintiff's seventh cause of action for wrongful termination alleges Defendant "terminated/failed to hire Plaintiff in violation of [ ] fundamental public policy."  (Am. Compl., p. 9.)  An employer's discharge of an employee in violation of a fundamental public policy

1   embodied in a constitutional or statutory provision can give rise to a tort action.  *Barton v. New*
2   *United Motor Manufacturing, Inc.*, 43 Cal. App. 4th 1200, 1205 (1996).  To sustain a claim of
3   wrongful termination in violation of public policy, a plaintiff must prove that his dismissal
4   violated a policy that is fundamental, beneficial for the public, and embodied in a statute or
5   constitutional provision.  *Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238, 1256 (1994) (citing
6   *Gantt v. Sentry Insurance*, 1 Cal. 4th 1083, 1095 (1992)).

7         Defendant contends Plaintiff has failed to refer to any "specific public policy supported by
8   statute or the Constitution upon which his claim is based."  (Doc. 23-1, p. 11.)  The Amended
9   Complaint, however, alleges Plaintiff was unlawfully terminated from Defendant's training
10  program due to his medical disability.  (*See* Amended Compl., pp. 4-5 (alleging that Plaintiff "was
11  fired because of his need for mental health medication, ie [*sic*] because of his disability or
12  [Defendant's] perception that he had a disability"); 9.)  Under California law, terminating an
13  employee because of his disability is sufficient to support a claim for wrongful termination in
14  violation of public policy.  *See City of Moorpark v. Super. Court*, 18 Cal. 4th 1143, 1158-61
15  (1998).

16        However, as discussed above, Plaintiff has failed to allege facts demonstrating a direct link
17  between his medical condition and his termination from the training program.   A necessary
18  element of wrongful termination in violation of public policy is that the termination was
19  effectuated on an improper basis.  *Id.*  The Complaint repeatedly states that Defendant acted in
20  contravention of "fundamental public policy;" it does not, however, actually demonstrate that
21  Plaintiff was terminated from the training program *because of* his medical disability.  Conclusory
22  statements that Defendant "terminated/failed to hire" Plaintiff in violation of public policy fall
23  well short of the pleading standard required to survive a motion to dismiss.  *Iqbal*, 556 U.S. at 678
24  (a complaint must include something more than "an unadorned, the defendant-unlawfully-harmed-
25  me accusation" or "'labels and conclusions'" (quoting *Twombly*, 550 U.S. at 555)).

26        Because Plaintiff has failed to allege facts establishing a claim for termination in violation
27  of public policy, the Court must dismiss his claim.

28  //

16

**B.      Leave to Amend Will Be Granted[7]**

Plaintiff's Complaint must be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).   However, the Ninth Circuit has repeatedly cautioned that *pro se* complaints "may only be dismissed 'if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"   *Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014) (quoting *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012)).

Plaintiff's Amended Complaint is therefore DISMISSED without prejudice and with leave to amend the deficiencies discussed above.   Plaintiff is reminded that to survive a motion to dismiss, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."   *Iqbal*, 556 U.S. at 678.   Plaintiff is advised that an amended complaint supersedes the original complaint, and it must be "complete in itself without reference to the prior or superseded pleading."   Local Rule 220.   Once Plaintiff files a Second Amended Complaint, the original pleading no longer serves *any* function in the case.   Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

Plaintiff has again requested thirty days extension of time to continue seeking an attorney to represent him in this matter.   (Doc. 24, p. 4.)   Therefore, Plaintiff will be granted an additional thirty days to file a Second Amended Complaint.   Any amendment to Plaintiff's Amended Complaint shall be made within sixty (60) days of service of this Court's order.

**C.      Defendant's Motion to Strike Plaintiff's Prayer for Attorneys' Fees Pursuant to Rule 12(f) is GRANTED without Prejudice and with Leave to Amend**

Defendant contends that Plaintiff is unable to recover attorneys' fees as a matter of law. (Doc. 23-1, p. 12.)   Plaintiff objects to this motion because "it erroneously asks for [the] [C]ourt to strike [a] demand for attorney[s'] fees . . . [however,] [i]n the complaint filed and served CORRECTLY on [D]efendant there is no mention of [this] request." (Doc. 24, p. 2.)   The basis of Plaintiff's objection is unclear, as the operative complaint on the Docket clearly reflects a demand

---

[7]    The Court makes no ruling on Defendant's motion for a more definite statement pursuant to Fed. R. Civ. P. 12(e), as dismissal with leave to amend accomplishes the same ends as a 12(e) order.

1  for attorneys' fees.   (*See* Am. Compl., p. 11 at "Request for Relief", ¶ 6 (unambiguously

2  requesting "an award of attorneys' fees"); Doc. 23-2, p. 26 (same).)

3        In a Title VII or FEHA case, a "prevailing plaintiff ordinarily is to be awarded attorney[s']

4  fees in all but special circumstances." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 417

5  (1978).  However, "[i]t is well settled law that pro se litigants may not recover attorney[s'] fees."

6  *Konkol v. Oakwood Worldwide Local, LLC*, No. 2:14-CV-06596-ODW, 2015 WL 46177, at *4

7  (C.D. Cal. Jan. 2, 2015) (citing *Kay v. Ehrler*, 499 U.S. 432, 436-37 (1991)).

8        Because Plaintiff is proceeding *pro se* and does not have an attorney, his demand for

9  attorneys' fees must be stricken from the amended complaint and may not be included in his

10  Second Amended Complaint.  However, Plaintiff has repeatedly represented that he is actively

11  seeking legal counsel (*see* Docs. 9, p. 3; 24, p. 4), and if Plaintiff retains counsel to represent him

12  in further proceedings in this matter he would then be entitled to seek attorneys' fees.  Therefore,

13  the Court STRIKES, without prejudice and with leave to amend should Plaintiff eventually retain

14  legal representation, Plaintiff's request for attorneys' fees.

15        Plaintiff is cautioned that <u>if he proceeds *pro se*</u> in this matter, he <u>will not</u> be entitled to

16  attorneys' fees and therefore <u>should not</u> include a demand for attorneys' fees in his Second

17  Amended Complaint.

18                          **V.   CONCLUSION AND ORDER**

19        For the reasons set forth above, Defendant's motion to dismiss is GRANTED.

20  Accordingly, it is HEREBY ORDERED that:

21        1.    Plaintiff's Amended Complaint is DISMISSED pursuant to Rule 12(b)(6), without

22              prejudice and with leave to amend;

23        2.    Plaintiff's Demand for Attorneys' Fees is STRICKEN without prejudice and with

24              leave to amend, when and only when Plaintiff retains an attorney to represent him

25              in any further proceedings in this action; and

26  ///

27  ///

28  ///

3.    Plaintiff may file a Second Amended Complaint within 60 days of the date of this

order.

IT IS SO ORDERED.

Dated:    **January 8, 2016**                                  **/s/ Sheila K. Oberto**
                                                    UNITED STATES MAGISTRATE JUDGE